UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JASON LANDGRAF | No. 12 CR 783-1<br><br>Judge Harry D. Leinenweber |

### GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, submits the following sentencing memorandum. For the reasons set forth below, the government respectfully requests that this Court sentence the defendant, Jason Landgraf, to a term of imprisonment of 80 percent of the low end of the applicable Guidelines range, or 33 months.

### BACKGROUND

**I.     Proceedings to Date**

On October 3, 2012, Landgraf and codefendant Mark Estrada were charged by indictment with three counts of bank fraud, in violation of 18 U.S.C. § 1344. On September 26, 2013, pursuant to a plea agreement with the government, Landgraf pleaded guilty to Count One of the indictment. He is scheduled to be sentenced on November 12, 2014, at 9:45 a.m.

**II.    Facts Underlying the Offense of Conviction and Relevant Conduct**

The facts underlying the offense of conviction are accurately summarized in the Presentence Investigation Report ("PSR") and are set out in more detail in in the Government's Version of the Offense, appended to the PSR.

In brief, the offense of conviction arises from a bank fraud scheme that Landgraf directed from approximately July 2008 through May 2009. The scheme involved $2.5 million in lines of credit that Landgraf fraudulently induced Midwest Bank and Trust to issue to Landgraf Ltd. and an affiliated company called Modern Office, Inc. (together, the "Landgraf Companies"). Landgraf was the president and part-owner of the Landgraf Companies, which supplied office furniture to commercial customers.

Landgraf carried out the scheme with the assistance of Estrada, the Landgraf Companies' bookkeeper. During the loan application process, Landgraf directed Estrada to prepare and submit to Midwest Bank information concerning the Landgraf Companies' financial condition that Landgraf knew was false and fraudulent, including reports that falsely inflated the Landgraf Companies' accounts receivable and inventory. Landgraf also hired, on a temporary contract basis, a former employee who had helped set up the Landgraf Companies' accounting software. Landgraf directed the former employee to manipulate the Landgraf Companies' accounting records to be consistent with the false reports prepared by Estrada.

The governing loan agreements with Midwest Bank required the Landgraf Companies to submit monthly accounts receivable aging reports, inventory reports, and borrowing base certificates to the bank. After obtaining the lines of credit from Midwest Bank, Landgraf directed Estrada to falsify the required monthly reports as necessary to conceal that the lines were under-collateralized. On approximately

2

eleven occasions between July 2008 and May 2009, Estrada complied with this directive by submitting borrowing base certificates, inventory reports and accounts receivable aging reports to Midwest Bank that Landgraf knew were false and fraudulent, in that they substantially inflated the value of the Landgraf Companies' inventory and accounts receivable. When the Landgraf Companies abruptly closed in May 2009, they had accounts receivable of less than $900,000, a substantial portion of which was more than 90 days old and thus "ineligible" under the governing loan agreements. In contrast, the Landgraf Companies had just recently reported to the bank that they had "eligible" receivables of approximately $2.8 million.

The charged scheme was preceded by a similar scheme directed by Landgraf, involving a $2 million line of credit from the Landgraf Companies' previous lender, Benchmark Bank. Indeed, Landgraf replaced the Benchmark line of credit with the Midwest Bank lines of credit in part to conceal the fact that the Landgraf Companies had been submitting false financial reports to Benchmark.

## SENTENCING CONSIDERATIONS

Criminal sentencing has four purposes: retribution, deterrence, incapacitation, and rehabilitation. *United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). Section 3553(a), 18 U.S.C., mandates a sentence that is "sufficient, but not greater than necessary," to serve those purposes, and sets forth the factors to consider in arriving at such a sentence. But first, the Court must calculate the applicable Guidelines range, which provides a starting point and initial benchmark

3

for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *see also* 18 U.S.C. § 3553(a)(4). Next, the Court must consider the other § 3553(a) factors.[1] *United States v. Omole*, 523 F.3d 691, 697 (7th Cir. 2008).

## I.     Advisory Guidelines Range

The PSR calculates that Landgraf has an offense level of 22 and is in criminal history category I, yielding an advisory sentencing range of 41 to 51 months' imprisonment. PSR ¶ 132. The government concurs.

## II.    Section 3553(a) Factors

Pursuant to Guideline § 5K1.1, and provided that Landgraf "continued to provide full and truthful cooperation," the government agreed in paragraph 12 of the parties' plea agreement to "recommend a sentence that includes a term of imprisonment . . . of 80 percent of the low end of the applicable Guideline range." Based on Landgraf's advisory range, that figure turns out to be 33 months. Accordingly, because Landgraf has provided substantial assistance and fulfilled his obligation to provide full and truthful cooperation, the government recommends a sentence of 33 months' imprisonment.

In this case, the aggravating and mitigating factors weigh in favor of a sentence consistent with the government's recommendation. It goes without saying

---

[1] As the Court is aware, those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" (§ 3553(a)(2)(A)); the need "to afford adequate deterrence to criminal conduct" (§ 3553(a)(2)(B)); the need "to protect the public from further crimes of the defendant" (§ 3553(a)(2)(C)); and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" (§ 3553(a)(2)(D)).

that Landgraf's crime was serious: it caused substantial losses to an FDIC-insured financial institution; it entailed the manipulation of accounting records; it involved the concealment of the fraud from other Landgraf employees; and it took place over a span of almost a year. Moreover, Landgraf's conduct must be viewed in light of his status as a member of the Illinois Bar with an M.B.A. as well as a J.D. It is to his profound discredit that he forged ahead with the Midwest Bank scheme (not to mention the earlier Benchmark scheme) in spite of his professional training and obligations. It is also a factor in aggravation that he caused a far less sophisticated subordinate to participate in the scheme. Finally, it bears noting that Landgraf's prolonged efforts to conceal the Landgraf's Companies' parlous financial state left his employees in the lurch when the business abruptly shut down, without having adequately funded all its compensation and benefit obligations.

In mitigation, however, Landgraf acknowledged his guilt and agreed to cooperate with the government at an early stage of the investigation. He has expressed what the government believes to be sincere remorse for his misconduct, and has fully complied with his obligation under the plea agreement to provide full and truthful cooperation. The government will elaborate at sentencing on the substantial assistance provided by Landgraf. For present purposes, it should be noted that Landgraf's codefendant, Estrada, did not plead guilty until very shortly before his scheduled trial date, and that Landgraf's cooperation substantially facilitated the successful prosecution of this case.

In short, taken together, the aggravating and mitigating factors support the government's recommendation: a sentence that includes a term of imprisonment of 80 percent of the low end of the advisory Guidelines range, or 33 months.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to a term of imprisonment of 33 months.

Dated: October 29, 2014

                                          Respectfully submitted,

                                          ZACHARY T. FARDON
                                          United States Attorney

By:   /s/ Dylan Smith
        DYLAN SMITH
        Assistant United States Attorney
        219 South Dearborn St., 5th Floor
        Chicago, Illinois 60604
        (312) 353-5300